IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

In re    Mary Anne Goldsmith Beeson,          )                    Case No. 2010-03678-hb
                                      Debtor          )                    Chapter 11
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MOTION OF JOSEPH A. C. BEESON TO ABSTAIN FROM JURISDICTION OVER THIS
CASE UNDER 11 U.S.C. §305(a)(1) AND TO DISMISS THIS CASE

NOW INTO COURT, through his undersigned counsel, comes Joseph A. C. Beeson

(Hereinafter the "Husband"), a creditor and party in interest in the above captioned case and with

respect moves for the dismissal of this bankruptcy case under the provisions of 11 U.S.C.

§305(a)(1) because the interests of creditors and the debtor would be better served by such

dismissal:

JURISDICTION

Mary Anne Goldsmith Beeson (Hereinafter the "Debtor-Wife") filed a petition for relief

under Chapter 11 of Title 11 of the United States Code on May 23, 2010.

2.

This is a proceeding governed by Federal Rules of Bankruptcy Procedure 9014 arising

under 11 U.S.C. §305(a) and Local Rules 9013-1 et seq.  The United States District Court for the

District of South Carolina has original jurisdiction over this proceeding pursuant to 28 U.S.C.

§1334(b).  By local rule under authority of 28 U.S.C. §157(a) the United States District Court for

the District of SOUTH CAROLINA has referred all such proceedings to the Bankruptcy Court

for this District and ordered that the Bankruptcy Judge exercise all authority permitted by 28

U.S.C. §157.  This is a core proceeding pursuant to 28 U.S.C. §157 (b)(2)(A).

3.
UNDERLYING FACTS

On December 3, 2008 the Debtor-Wife filed a petition for divorce and settlement of

marital property entitled "*Mary Anne Goldsmith Beeson vs. Joseph Alford Crews Beeson*" in the

Family Court, Tenth Judicial Circuit, Anderson County, South Carolina bearing Docket No.

2008-DR-04-2622 (Hereinafter the "Divorce/Property Action").

4.

On December 10, 2009, the Honorable Tommy B. Edwards, the Divorce/Property Action

Judge issued an order on the motions for temporary relief requested by both parties (Hereinafter

the "Order For Temporary Relief") a copy of which is attached hereto as Exhibit "A."  Among

the findings and conclusions made in the Order For Temporary Relief are the following:

> ***The parties agree their assets must be managed and sold***, but cannot agree on the professionals to be involved in this process, and so far have had significant disagreements over the terms and structure of possible sales.  Both parties recognize the need or professional attention to be given to the management of their assets and liquidation of them. There are creditors calling upon the parties for payment of various obligations.  Given these circumstances, the complexity of the marital estate, the depressed economy (particularly with respect to real estate development), the inability of the parties to agree on how to use their assets during pendancy of this action, and the need for use of those assets to provide support for Plaintiff and the parties' daughter (at least on a temporary basis), ***it is appropriate to appoint a sequestrator to take control over all of the assets of the parties***. Plaintiff previously filed a motion to appoint a sequestrator, but withdrew this motion prior to the hearing on November 9, 2009.  Defendant referenced a "liquidating trust" in his affidavit filed with the Court.  On my own motion, I conclude a sequestrator is necessary in this civil action."
> (Emphasis supplied)

5.

Accordingly, the Family Court Judge's Order For Temporary Relief includes the

following orders:

11.   ***A sequestrator shall assume control over all assets
owned by either party, or in which either party holds any titled
or equitable interest, including those assets titled in the name
of either party individually, jointly with another, in any
partnership, joint venture limited liability corporation,
corporation, enterprise or other entity of any type or nature***. He
sequestrator shall be identified in a supplemental order to be
issued by the undersigned, in which the specific authority,
duties, rights and responsibilities of the sequestrator shall be
delineated. The undersigned retains and reserves jurisdiction to
issue such an order.

12.   Subject to the control and authority of the
sequestrator to be named by supplemental order of this Court, ***all
real property*** owned by Plaintiff, Defendant, 178 Associates, LLC
(an entity owned by Plaintiff and Defendant), or Beeson
Development Company (an entity controlled by Defendant), ***shall be
listed on the market for sale*** with one or  more independent.
qualified and licensed agent(s) or broker(s). In this regard. the
following terms and provisions shall apply:

a.   The amount of acreage to be marketed for sale with
the marital home, and any restrictions, easements, or
details necessary to sell this property. shall be mutually
agreed between the parties and confirmed in writing as part
of the listing agreement. or, if the parties are unable to
agree, determined by the sequestrator. It is anticipated
this home will be marketed for sale with several acres of
land, but not necessarily with all of the acreage owned by
the parties and/or 178 Associates, LLC which is situate
near the former marital home.  Any communication, meeting.
conference. or other efforts extended in· connection with
the listing of this property shall involve both parties
and/or their legal representatives and/or the sequestrator.

b.   The remaining acreage or any other acreage at the
former marital home shall be marketed or listed and
marketed in a mal1I1er mutually agreeable to the parties,
and with an agent or agents mutually agreeable to the
parties, or if they are unable to agree, appointed by the
sequestrator.

c.   Any and all offers received by either party regarding
the sale of any real estate shall be exchanged with the
other party immediately upon receipt.

d.   ***Each party shall act in good faith and in fair
dealing and treat each other in a fiduciary capacity with·***

*respect to the efforts to list, market and sell the real property assets.*

e.    If any real property is sold during the pendency of this action. The proceeds generated therefrom shall be applied to satisfy the obligations of any contract of sale, and then as follows unless the parries otherwise agree in writing:
  i.    Twenty (20%) percent of the proceeds shall be paid to Plaintiff;
  ii.   Twenty (20%) percent of the proceeds shall be paid to Defendant;
  iii.  Sixty (60%) percent of the proceeds shall be held in escrow/trust pending further agreement of the parties or further order from this Court.
  (Emphasis supplied)

6.

Although the Order For Temporary Relief included an order allowing the Debtor-Wife to remain in the approximately 7,000 square foot former marital home, that order was expressly made "temporary" and was obviously subject to the order directing the Sequestrator to sell the marital home and surrounding property.

7.

On December 22, 2009 the Judge in the Divorce/Property Action entered an Order Appointing Michael D. Glenn, as Sequestrator; (Hereinafter the "Order Appointing Sequestrator") a copy of which is attached as Exhibit "B.". According to the Order Appointing Sequestrator the choice of Mr. Glenn as Sequestrator and the provisions of the order describing the instructions and authority of the Sequestrator were expressly made "**[w]ith the consent of the parties . . .**"(Emphasis supplied).

8.

Neither the Order For Temporary Relief nor the Order Appointing the Sequestrator was appealed by either party and those orders are now final.

9.

The Order Appointing the Sequestrator granted to the Sequestrator broad powers to manage and sell the all of the real property of the parties and their associated entities but also included the following important orders directed to the parties:

> 8. *Each party shall cooperate with the Sequestrator* and do anything reasonably requested of him or her by the Sequestrator.
>
> 9. *Neither party shall interfere with the Sequestrator* or do anything to preclude the Sequestrator from performing his responsibilities and duties.
> (Emphasis added)

10.

In March, 2010, the Sequestrator filed a motion (Hereinafter the "Sequestrator's Motion") with the Family Court seeking an order:

> 1. *Requiring Plaintiff to cooperate with the Sequestrator and agents of First Citizens Bank to allow the appraisal of the marital home* and adjacent acreage located at or near 2150 River Road, Piedmont, South Carolina. In the event Plaintiff's unwilling to cooperate to secure the appraisal of the property, the Sequestrator requests that the Court appoint some other individual to assure that the appraisal can be completed in a timely manner.
>
> 2. *Requiring Plaintiff to cooperate with the Sequestrator and any real estate agent authorized by the Sequestrator to examine and tour the marital home* and adjacent acreage for the purpose of listing the property for sale. In the event Plaintiff refuses to cooperate with the Sequestrator and any real estate agent chosen by the Sequestrator, the Sequestrator requests that the Court appoint another individual to be responsible for assuring that any real estate agents chosen by the Sequestrator be given
>
> full and adequate access to the marital home and adjacent property in a manner determined by the Sequestrator and/or real estate agent chosen by the Sequestrator.
> (Emphasis added)

A copy of the Sequestrator's Motion is attached hereto as Exhibit "C.

11.

In support of the Sequestrator's Motion the Sequestrator filed an affidavit (Hereinafter the "Sequestrator's Affidavit"), a copy of which is attached to the Sequestrator's Motion, which explained the reasons for the filing of the Sequestrator's Motion.

12.

The Sequestrator's Affidavit, states that upon being appointed as Sequestrator, Mr. Glenn learned that the mortgage on the family home and surrounding property, held by First Citizens Bank, was seriously in arrears and would soon be subject to foreclosure. Mr. Glenn aggressively negotiated a proposed forbearance agreement with First Citizens Bank which would have retroactively reduced the interest rate and provided a six month extension of time to market the family home. A condition of the forbearance agreement was that the bank be allowed to have its chosen appraiser enter the home to perform an appraisal. Mr. Glenn contacted the Debtor-Wife to make arrangements for the bank's appraiser to visit the former family home and was refused admittance unless the bank provided a copy of the appraisal to the Debtor-Wife which the bank had no obligation to provide.

13.

Mr. Glenn further stated in his affidavit to the Family Court that he believed that the failure of the Debtor-Wife to cooperate with the appraisal would result in the filing of a foreclosure on the former family home with "devastating effect" on the his ability to market that property. The offer of the forbearance agreement has been withdrawn by First Citizens Bank.

14.

On April 29, 2010 First Citizens Bank filed a foreclosure action entitled "*First Citizens Bank & Trust Company, Inc. vs. Mary Anne Beeson and Joseph A.C. Beeson and Michael D.*

*Glenn*" in the Court of Common Pleas, Anderson County, South Carolina bearing Civil Action

No. 2010-CP-04-01599 foreclosing on the mortgage on the former family residence.  That action

was pending on the date of the filing of the Debtor-Wife's petition for bankruptcy relief.

15.

A hearing was held on May 13, 2010 in the Family Court in the Divorce/Property Action

on the motions of the Sequestrator which resulted in the issuance on May 14, 2010 of an order:

a.   Approving the sale of the "Spinx" property and for the sale of Mr. Beeson's interest in WBN, LLC which together are expected to net the parties approximately $905,000.

b.   Approving the Sequestrator's plan for payment of a portion of those proceeds to pay $483,000 toward an unsecured debt to Peoples National Bank for which amount the bank has agreed to dismiss a collection suit seeking to recover that amount plus interest, attorneys fees and costs.

c.   Approving the Sequestrator's plan for payment of the balance of the sales proceeds to pay towards either a $1,000,000 debt to Cornerstone Bank or towards a $200,000 mortgage owed to Cornerstone Bank.

A copy of the May 14, 2010 order is attached as Exhibit "D."  After the evidentiary hearing on

May 13, the Family Court's May 14, 2010 order made express findings that those sales were

"reasonable" and "should be approved."

16.

On May 19, 2010 Counsel for the Debtor-Wife in the Divorce/Property Action filed a
notice of appeal of the May 14, 2010 order.[1]

17.

In May, 2010, the Sequestrator received and accepted an offer from CJKS, LLC to buy
the Family Home and approximately 63 acres of land for $1,950,000 cash.  That amount would
have paid the debt owed by Husband and Debtor-Wife to First Citizens Bank on the note
securing the mortgage on that property.

18.

In violation of her fiduciary duties established in the Order For Temporary Relief and in
violation of the orders requiring cooperation and non-interference with the Sequestrator
contained in the Order Appointing the Sequestrator, the Debtor-Wife made a personal visit to the
home of one of the principals of CJKS, LLC to visit with the wife of that principal in order to
explain that she did not wish to sell the family home.

19.

On May 17, 2010, James M. Stephens, of CJKS, LLC signed and delivered to the
Sequestrator a written and notarized confirmation of his verbal notice of withdrawal of the offer
to purchase the family home and surrounding property "due to Mary Annes (sic) objection to the
sale."  A copy of that notice which is attached hereto as Exhibit "E."

---

[1]      The Notice of Appeal also purports to appeal the December 10, 2009 Order For Temporary Relief and the
December 22, 2009 Order Appointing Sequestrator, but as previously noted the delays for appeal of those orders
expired many months ago.

20.

On Monday, May 24, 2010 a hearing was scheduled to be held in the Family Court on motions of the Husband which among other things were requesting an order directing the Debtor-Wife to cooperate with the Sequestrator in the marketing and sale of the former family home or alternatively requesting an order that the Debtor-Wife vacate the former family home. A copy of the Husband's motion scheduled for May 24, 2010 is attached hereto as Exhibit "F." This Chapter 11 case was filed on Sunday, May 23, 2010.

21.

Both the Debtor-Wife and the Husband have filed with the Family Court the Financial Declarations required by Rule 20 of the South Carolina Rules of the Family Court.  Although their estimates of the value of the couple's marital property are substantially different, both the Debtor-Wife and the Husband show in their Financial Declarations that **their marital property substantially exceeds their marital debts**.  Those financial declarations will be filed with the Court at or before the hearing on this motion.  The only other debts shown in the initial schedules filed by the Debtor wife are a recent credit card debt of some $34,637.50 and an accountant's bill for $3,064.71.

22.

On May 25, 2010 an written offer, accompanied by a check for a $10,000 deposit, was presented to the Sequestrator for the purchase of the family home including the surrounding 63 acres and a separate 180 acre tract of land for $3,550,000 cash.  A copy of that offer is attached hereto as Exhibit "G."  The Sequestrator has indicated his intent to accept the May 25, 2010 offer but has not done so because of the filing of this case and the automatic stay.

23.

If the sale of the Spinx property, the sale of Mr. Beeson's WBN, LLC interest and the sales of the former family home and acreage proposed in the May 25, 2010 offer are allowed to close, the net proceeds of those sales will eliminate all of the marital debt of the Debtor-Wife and Husband.

24.
APPLICABLE LAW

This Court is authorized to abstain from exercising jurisdiction over this case and therefore to dismiss this case under the provisions of 11 U.S.C. §305(a)(1) which provides, in pertinent part:

§ 305. Abstention

(a)    The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if--

(1)    the interests of creditors and the debtor would be better served by such dismissal or suspension

* * *

25.

The leading case in this Court on the application of 11 U.S.C. §305(a)(1) is *In re Golf Course Marketing Corp.*, 95-76646-W, 1996 WL 33340787 (Bkrtcy.D.S.C. 5/16/96)(JW) in which Judge Waites held that:

As stated in *In re ABQ-MCB Joint Venture,* 153 B.R. 338 (Bkrtcy.D.N.M.1993) in determining whether to dismiss an involuntary Chapter 7 proceeding under § 305, the court should consider fairness, priorities in distribution, capacity for dealing with frauds and preferences, speed, economy, freedom from litigation, the importance of a discharge to the debtor, a pending state proceeding, the small number of remaining creditors, the necessary complexity of the bankruptcy process, efficiency and economy of administration. *In re ABQ-MCB Joint Venture,* 153 B.R. at 341.

26.

Similarly, the Court in *In re Spade*, 258 B.R. 221 (Bkrtcy. D. Colo. 2001) held that:

In determining whether dismissal under § 305 is appropriate, courts must look to the individual facts of each case. *See In re Trina Assoc.,* 128 B.R. 858, 867 (Bankr.E.D.N.Y.1991). Courts applying the broad interpretation of § 305 have considered a number of different criteria to determine whether a case should be dismissed under this section, including, but not limited to: (1) the motivation of the parties seeking bankruptcy jurisdiction; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) the economy and efficiency of administration; (4) the prejudice to the parties; *See In re Fax Station, Inc.,* 118 B.R. at 177 (and cases cited therein); *In re Tarletz,* 27 B.R. at 793; *In re Realty Trust Corp.,* 143 B.R. at 926. *In re Spade*, 258 B.R. at 231.

27.
ARGUMENT ON FACTS AND LAW

Mover suggests the following analysis of the factors to be considered on a Motion To Abstain under 11 U.S.C. §305(a)(1):

a.      **Fairness**

The Family Court has already made reasonableness findings in the sales of marital property which have thus far been approved. The Family Court also has in place a court appointed fiduciary to handle the sale of the remaining marital assets. There are no other justifiable fairness concerns.

b.      **Priorities In Distribution**

There are no marital debts for past due taxes or other debts which would be entitled to priority which are relevant in this matter.

c.      **Capacity For Dealing With Frauds And Preferences**

There are no claims thus far asserting fraud and no preferences which are known to the mover.

**d.**      **Speed**

The processing of this Chapter 11 proceeding to sell the marital property would require substantial additional time and expense for the appointment of a trustee and delay the sales which have already been approved and the sale offer recently made.

**e.**      **Economy**

There is no justifiable reason to restart the process of liquidation of the parties marital property with a new fiduciary with all of the attendant additional expense.  The Chapter 11 process will require substantial additional cost which is unnecessary under the circumstances.  If the approved and proposed sales of marital property are allowed to be completed, all of the marital debt will be resolved within a short time and there will be no need for this court's judicial supervision or reorganization of the Debtor-Wife's financial affair.

**f.**      **Freedom From Litigation**

The completion of the approved and proposed sales will result in the satisfaction of all outstanding debts and the dismissal of all outstanding collection actions.

**g.**      **The Importance Of A Discharge To The Debtor**

If the approved and proposed sales are completed, the Debtor-Wife will not need a bankruptcy discharge.

**h.**      **A Pending State Proceeding**

There is already pending a state proceeding in which the Court has demonstrated a hands on supervision of the liquidation of the marital property and good control of the proceedings through the appointment of a fiduciary to handle that process.

**i.        The Small Number Of Remaining Creditors**

There will be no remaining creditors other than the Debtor-Wife's recent credit card debt if the approved and proposed sales are completed.

**j.        The Necessary Complexity Of The Bankruptcy Process**

A Chapter 11 proceeding with all of the required processes and procedures is totally unnecessary under the circumstances of this case.

**k.        Efficiency And Economy Of Administration**

A Chapter 11 proceeding with all of additional cost of the required processes and procedures is totally unnecessary under the circumstances of this case.

**l.        The Motivation Of The Parties Seeking Bankruptcy Jurisdiction**

It appears that the sole motivation of the Debtor-Wife in the filing of this bankruptcy case is the delay in the sale of the former family home.  That sale is essential to obtain the funds necessary to resolve marital debt.

**m.        The Prejudice To The Parties**

Maintaining this Chapter 11 case will cause substantial delays and additional costs to both the Debtor-Wife and the Husband which are unjustifiable under the circumstances.

27.

In summary, this bankruptcy case was filed by a wife who fears the loss of her 7,000 square foot luxury residence.  This case is very much like *In re Evans*, 8 B.R. 568, 572 (Bankr.M.D.Fla. 1981) in which the Court held that:

> There is one additional reason why this case should not remain and should be dismissed.  Shortly after the case was filed, it became apparent that ***this is nothing but an extension and a rehash of a bitter domestic contest between feuding***

*spouses*, primarily centered around a property settlement; alimony and custody of the children, all matters which were and still are properly before the  . . . [State Court]. It is now obvious that this entire mountain is made out of a molehill, and was conceived by Ms. Adams only as a tool to wreak revenge and to invoke the protection of the automatic stay of s 362 of the Bankruptcy Code under the mistaken assumption that the automatic stay would somehow ***prevent the sale of the former marital home ordered to be sold by the divorce court***. . . . Thus, it is evident that this is not really a bona fide insolvency proceeding initiated by bond (sic) fide creditors and the right of the parties can and should be adjudicated by the State Court. Thus, if nothing more, this Court should abstain by virtue of §305(a)(2)(B) and this case should be dismissed.
*In re Evans*, 8 B.R. at 572.

28.

RELIEF REQUESTED

For the reasons stated above, this case should be dismissed because the interests of

creditors and the debtor would be better served by such dismissal.

29.

Just prior to the filing of this motion the Debtor-Wife filed an adversary proceeding

complaint entitled "*Mary Anne Goldsmith Beeson vs. Michael D. Glenn, in his official capacity

as Sequestrator in Anderson County Family Court Case 2008-DR-04-2622*" bearing Adversary

Proceeding No. 10-80079 seeking an order for turnover from the Family Court appointed

Sequestrator of "all assets in his possession to" the Debtor-Wife.  Upon dismissal of this case on

this motion to abstain, Adversary Proceeding No. 10-80079 should become moot and should also

be dismissed.

WHEREFORE JOSEPH A. C. BEESON PRAYS, after notice and a hearing, that this

Court:

a.       Dismiss this case under the provisions of 11 U.S.C. §305(a)(1);

b.    Determine that Adversary Proceeding No. 10-80079 is moot and dismiss that

adversary proceeding.

c.    Grant to mover all necessary and proper orders and relief as well as general and

equitable relief.

Respectfully submitted:

By:  _____/s/ *George L. Clauer, III*_____

George L. Clauer, III, SC Fed. Bar #09367
Clauer Law Firm, LLC
Post Office Box 477, Salem SC 29602
Telephone: 864-719-4296
Date: May 28, 2009          Facsimile: 864-944-5494
Email gc_clauerlaw@bellsouth.net

Attorney for Joseph A. C. Beeson